WILLIE CRAIG WILLIAMS, JR., APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 11223

December 11, 1979                                    603 P.2d 694

[Rehearing denied January 29, 1980]

*William N. Dunseath,* Public Defender, and *Michael B. McDonald,* Deputy Public Defender, Washoe County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Calvin R. X. Dunlap,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Convicted by jury verdict of sexual assault (NRS 200.366), Willie Craig Williams, Jr., contends we must reverse the judgment and remand the case to the district court for a new trial because (1) evidence of other sexual misconduct allegedly committed by him was improperly admitted at his trial and (2) the prosecutor made prejudicial statements during the trial regarding his propensity for criminal conduct.

Williams also has filed a motion for an order treating respondent's failure to timely file its answering brief as a confession of error.[1] *See* NRAP 31(c). Such a failure may, in the

---

[1] Respondent was granted seven extensions of time to file its answering brief; the brief was ultimately filed ten days after the expiration of the last extension. We do not condone, and herein express our disapproval of, such dilatory conduct. *See* Dias v. State, 95 Nev. 710, 601 P.2d 706 (1979).

discretion of this court, be treated as a confession of error and result in the reversal of the judgment without consideration of the merits. Toiyabe Supply Co. v. Arcade, 74 Nev. 314, 330 P.2d 121 (1958). We elect to consider this appeal rather than to set aside the trial court's judgment for respondent's failure to file its brief within the prescribed time. *See* Petri v. Sheriff, 87 Nev. 549, 491 P.2d 43 (1971).

Williams was convicted of having sexual intercourse with a female without her consent. At the trial, the complaining witness testified that in April 1978, Williams telephoned her and inquired about her interest in obtaining employment with him as a secretary. She replied that, although she was interested in a job, she was not feeling well that day and therefore could not meet with him to discuss the matter. However, after Williams told her that his heavy schedule would preclude a later meeting, she agreed to meet with Williams at her residence that day.

Williams arrived at the witness's residence a short time later. A discussion ensued for several hours, during which Williams related to the witness the advantages of the job opportunity. She, however, expressed little interest in the prospect and asked Williams to leave. Williams remained, continued talking and ultimately offered her $5,000 for a "one-night stand." She refused, but Williams persisted, telling her, "you don't have a choice now." Finally, after Williams told her that he had a black belt in karate, demonstrated what he could do to her with his karate expertise, and stated that he could "make it very nasty" for her seven-year-old daughter, the witness submitted to Williams' demand to have intercourse.

Williams testified at the trial that he did have intercourse with the complaining witness, but claimed that she consented to the act. He denied that any coercion or threats occurred.

On rebuttal, the prosecution called as witnesses two women who testified that they had intercourse with Williams against their will in September 1976. Each woman stated that she had met Williams at a job interview and that Williams subsequently coerced her into submitting to intercourse with him after demonstrating his ability with karate. The trial judge instructed the jury that this evidence was "admitted on the limited question of whether or not the defendant intended to engage in sexual activity with the alleged victim against her will, and should not be considered for any other purpose."[2]

---

[2]NRS 48.045 provides in pertinent part:

"2. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

1. Williams contends, among other things, that evidence of his sexual misconduct with other persons should not have been admitted at the trial because such evidence was not relevant to prove his intent to sexually assault the victim. He claims that since he is asserting consent of the victim as a defense, it is her intent, not his, that is at issue here. We disagree.

It is the general rule that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that the accused committed the charged crime because of a trait of character. Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966). See NRS 48.045(2), supra, n. 2. But see Willett v. State, 94 Nev. 620, 584 P.2d 684 (1978); McMichael v. State, 94 Nev. 184, 577 P.2d 398 (1978) (limited exception in area of sex crimes). Even where relevancy under an exception to the general rule may be found, evidence of other criminal acts may not be admitted if its probative value is outweighed by its prejudicial effect. Nester v. State, 75 Nev. 41, 334 P.2d 524 (1959).

The crucial question in determining if a sexual assault has occurred is whether the act is committed without the consent of the victim, Dinkens v. State, 92 Nev. 74, 546 P.2d 228 (1976), and the intent of the accused is relevant to the issue of consent or lack thereof. State v. Hampton, 529 P.2d 127 (Kan. 1974). In the instant case, evidence of Williams' sexual misconduct with other persons was admitted as being relevant to prove his intent to have intercourse with the victim without her consent. This evidence was introduced after Williams admitted committing the act, but claimed to have done so with the victim's consent. By acknowledging the commission of the act but asserting his innocent intent by claiming consent as a defense, Williams himself placed in issue a necessary element of the offense and it was, therefore, proper for the prosecution to present the challenged evidence, which was relevant on the issue of intent, in order to rebut Williams' testimony on a point material to the establishment of his guilt. See People v. Westek, 190 P.2d 9 (Cal. 1948). See also Hunt v. State, 211 S.E.2d 288 (Ga. 1974); State v. Hampton, supra.

The remarkable similarity of the modus operandi in the testimony regarding the other crimes, and their relative proximity in time to the charged offense establish the probative value of such evidence. See McMichael v. State, supra. Moreover,

admission of the challenged evidence was justified by necessity, since the element of the crime sought to be proved (intent to commit the act without consent) was not substantially established by other evidence. *See* Jones v. State, 85 Nev. 4, 448 P.2d 702 (1969); Tucker v. State, *supra.* Under these circumstances, we uphold the determination of the trial court that the probative value of the evidence outweighed its prejudicial effect.

2. Williams also seeks reversal because of alleged prejudicial remarks made on two occasions by the prosecutor during the trial regarding Williams' propensity for criminal conduct. Although such remarks may have been improper, a review of the record does not establish that Williams was thereby prejudiced. *See* Pickworth v. State, 95 Nev. 547, 598 P.2d 626 (1979).

Accordingly, the judgment is affirmed.