**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

MARCH 26, 2026

*CHIEF JUSTICE*

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 26, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 103835-6 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| COLE EDWARD KRAUSE, | ) | |
| Respondent. | ) | Filed: <u>March 26, 2026</u> |

GONZÁLEZ, J.—A defendant's motion to sever charges shall be granted when "severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). After a trial court denied multiple motions to sever, a jury convicted Cole Krause on four charges of rape committed against three victims. The trial court had denied severance because all the charges were related and the victims' decisions on when and whether to report were intertwined.

We must decide whether, as the Court of Appeals concluded, the trial court abused its discretion in denying severance. We conclude the trial court acted within its discretion. Accordingly, we reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

BACKGROUND

A jury convicted Krause of three counts of third degree rape against A.C.S., A.L., and A.C., and one count of second degree rape against A.C.[1] At trial, each victim testified that they did not consent to having sex with Krause. Each victim also detailed their interconnected paths to reporting what happened to the police.

A.C.S. testified she reported her rape on the day it happened. A.C.S. also testified she lost friends, was bullied on social media, and moved away after her report.[2]

A.L. testified she did not immediately make a report to the police because of how A.C.S. was treated.

A.C. testified she reported what happened to her to the police to support A.L. A.C. also testified that Krause had told her that A.C.S.'s report was not true.

Krause testified that each victim consented.

Krause unsuccessfully moved to sever the charges, before and during trial, into two or three separate trials. The court explained its denial of Krause's pretrial motion to sever by saying:

> [S]everance should be ordered to promote a fair determination of guilt or innocence as to each charge. Working backwards, from the argument [defense counsel] has made, I do believe that if these cases

---

[1] Based on the sensitive nature of the charges, this background section is limited to the facts necessary for a just disposition.

[2] Initially, the State charged Krause in juvenile court with third degree rape of A.C.S. The court dismissed the charge because A.C.S. no longer wanted to participate. A.C.S. decided to participate again after Krause was arrested for raping A.L.

2

proceed to trial all at once, or these charges, that in fact Mr. Krause would receive a fair trial. . . .

The test, four parts; the strength of the State's case on each count, clarity of the defenses, can the court properly instruct the jury, and cross-admissibility. . . .

. . . [I]t does appear to me that these events are cross-admissible. The strength of the State's case on each count is very similar. Clarity of the defenses, it appears to be the same defense as to all. And I do believe that the Court can properly instruct the jury.

The appellate cases that discuss these issues very much do go into the inherently prejudicial effect of prior sex offenses and the admissibility of those. What we are dealing with here are what I would call current allegations. These have not previously been proven against Mr. Krause. So it's all pre-adjudication. And, again, all of these appear to be cross-admissible against each other or with each other.

. . . .

So I am denying the motion to sever. It appears joinder was proper. I am not finding that there is some manifestly prejudicial effect of going to trial on all of these at one time. . . .

. . . .

. . . [E]very case and every charge[] must be viewed independently. These do appear to be cross-admissible. I do believe that Mr. Krause would receive a fair trial. It's not just the name of the charge is the same or that the general nature of the allegation is the same. It's the specific facts as asserted by the State and by these witnesses to these events. So, it's the nature of the people, the acts, everything involved in the actual cases or charges that leads me to the conclusion that they are cross-admissible. So this is different from other cases where individuals might be completely unrelated.

1 Verbatim Rep. of Proc. (VRP) (Feb. 10, 2022) at 30-35. Subsequently, the court

explained:

> Initially I will say when I saw the motion to sever and reviewing the affidavit of probable cause[,] which is a very short version of the anticipated testimony, it seemed that severance potentially was appropriate. But that's just one small snapshot of what the anticipated testimony is. It is the interrelation between the allegations and all of these individuals which leads me to the conclusion that they are cross admissible.
>
> I don't believe that proceeding in this fashion tips the balancing scale towards an unfair trial. I do believe that the jury can be instructed to each of these charges independently, and again just briefly, I don't believe this somehow causes an injustice or unfair proceeding to Mr. Krause. The charges were properly joined. There is ample anticipated testimony which supports the conclusion that they should proceed as one trial. Certainly if the anticipated testimony doesn't come out, the defense can raise the issue again. So I am, for the record, denying the motion to sever.

5 Verbatim Tr. of Proc. (VTP) (Mar. 1, 2022) at 131-32.

The court also denied Krause's renewed motion to sever after the State

rested, explaining:

> This issue now has been argued several times. This was briefed and presented to the Court pretrial. At the time of the pretrial motion, obviously the Court did not have the benefit of testimony. As I consider all of these types of issues when they are brought pretrial, it is really just the preliminary ruling. The charges were properly joined. The issue is whether or not severance should be granted.
>
> Frankly, I will keep this somewhat short. After having the benefit of the actual testimony, the decision to not sever the offenses is actually bolstered. It does appear—and I would disagree with the assertion that these are not cross admissible. I am not going to go into great detail as to the appropriate test, but the evidence really here, it all builds off of itself from the various witnesses and I just don't see how in a single case, we wouldn't potentially have all of the same witnesses. So it does seem that joinder is appropriate.

4

Dealing with the issue of judicial economy, I think it is not unknown that generally to me that it's the last of the factors that we are looking at, but when we are dealing with evidence that clearly appears to be cross-admissible. And when we are dealing with all of the same witnesses, I don't think the Court can be unmindful of the length of the trial when we are dealing with all of the protocols that are in place, just thinking about this quickly, even if the protocols weren't in place, I think we would be in the same situation.

My experience is that jury selection on these types of cases is lengthy. We likely would be dealing with the same number of potential jurors, the same questionnaire, so I do think that judicial economy should be taken into account. Although, as I said, it is not frankly a weighty factor to me but it also is added in.

Also in my experience, juries can clearly separate the different charges. That is bolstered by what a jury did just a week ago. They clearly considered separate charges on a similar in nature type of offense and made their own determination as to each count. And that is but one example of many.

So I am denying the motion for severance. I do believe the charges were properly joined.

12 VTP (Mar. 10, 2022) at 1089-91.

In closing, the State argued, in relevant part:

There is no motivation of these girls to make this up. All you have to do is say no. [A.C.S.] said no, and he had sex with her anyway. [A.L.] said no, and he had sex with her anyway. [A.C.] was either incapable of saying no or another time said no, and he had sex with her anyway.

That connection will be a shared experience between them long past this case. But here in this courtroom, the evidence is clear. The evidence leads to but one verdict, and that . . . is guilty.

5

14 VTP (March 14, 2022) at 1385; *see also id*. at 1450 ("There is one verdict for these girls . . . .").

The court instructed the jury that it must consider each count separately and not let its verdict on one count control the verdict on any other count. The jury found Krause guilty of all charges.

In a split decision, the Court of Appeals reversed, holding the trial court abused its discretion in allowing the State to try all four counts together. *State v. Krause*, No. 84599-3-I (Wash. Ct. App. Dec. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/845993.pdf. We granted review. 4 Wn.3d 1026 (2025). The Sexual Violence Law Center submitted an amicus brief in support of the State.

ANALYSIS

We review trial court severance rulings for manifest abuse of discretion. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). Discretion is abused when no reasonable person would decide the issue the way the trial court did. *Id.* at 78 (citing *State v. Rice*, 110 Wn.2d 577, 600, 757 P.2d 889 (1988)). To show manifest abuse of discretion, Krause must "point to specific prejudice." *State v. Bythrow,* 114 Wn.2d 713, 720, 790 P.2d 154 (1990).

Krause contends our review in this case should be de novo because the trial court erroneously believed another judge had previously denied Krause's motion to

sever. We conclude abuse of discretion is the correct standard because the trial court explicitly came to an independent judgment. *See* 1 VRP (Feb. 10, 2022) at 32. That judgment is entitled to appropriate deference on appeal.

The record establishes that the trial court reached that judgment in line with the purpose and structure of CrR 4.4: a preliminary ruling based on anticipated evidence, followed by reassessment based on the actual evidence presented. *See State v. McCabe*, 26 Wn. App. 2d 86, 94-96, 526 P.3d 891, *review denied*, 1 Wn.3d 1032 (2023). The trial court engaged in a fact-intensive inquiry on the record, weighed the severance factors, and directly observed whether the jury could compartmentalize the evidence. *See* 12 VTP (Mar. 10, 2022) at 1091 (finding the jury "can clearly separate the different charges.").[3]

Washington law generally disfavors separate trials. *State v. Grisby*, 97 Wn.2d 493, 506, 647 P.2d 6 (1982). To show denial of severance was improper, Krause must demonstrate that a trial involving all counts was so manifestly prejudicial as to outweigh the benefits of joinder.[4] *State v. Slater*, 197 Wn.2d 660,

---

[3] Krause also argues de novo review is appropriate because the trial court "failed to make an explicit record of the ER 404(b) analysis." Suppl. Br. of Resp't at 15 (citing *State v. Riley*, 12 Wn. App. 2d 714, 721, 460 P.3d 184 (2020) (noting that when the trial court "fails to document its ER 404(b) analysis," the appellate court may "review its decision de novo")). However, Krause has not demonstrated that an on the record ER 404(b) analysis is required when deciding a CrR 4.4(b) motion to sever.

[4] We use the phrase "benefits of joinder" instead of "judicial economy" because prejudice is not

676, 486 P.3d 873 (2021). If a joint trial would undermine a defendant's presentation of separate defenses or invite a jury to cumulate evidence to find guilt or infer a criminal disposition, severance is required. *Russell*, 125 Wn.2d at 62-63.

Krause also contends that the charges against him were impermissibly joined. "Joinder" and "severance" are related concepts. *See State v. Bluford*, 188 Wn.2d 298, 305-06, 393 P.3d 1219 (2017). "Joinder of offenses" refers to bringing multiple criminal charges against one person as separate counts in a single charging document. CrR 4.3(a). Offenses are eligible for joinder under CrR 4.3(a) if they are either (1) of the same or similar character or (2) based on the same conduct or part of a single scheme or plan. In addition, the trial court must ensure the accused person is not undermined by presenting a multiplicity of unrelated and unconnected charges. *Bluford*, 188 Wn.2d at 307 (quoting *State v. Brunn*, 145 Wash. 435, 437-38, 260 P. 990 (1927)). Here, the charges, as tried, turn on consent. The charges satisfied the "same or similar character" standard under CrR 4.3(a)(1), and, as will be explained later in the opinion, the charges were related and connected.

To determine whether a defendant will be unfairly prejudiced by a joint trial, courts must first consider the following factors: (1) the strength of the State's

---

overcome simply because separate trials might require more time, effort, and safety precautions.

Krause asks us to review his objection to joinder because it is "inextricably connected to the questions raised in th[e] petition." Suppl. Br. of Resp't at 16 n.6. We consider this issue alongside his motions to sever.

evidence on each count, (2) the clarity of defenses as to each count, (3) the ability to instruct the jury to consider each count separately, and (4) the admissibility of evidence of the other charges even if not joined for trial. *Russell*, 125 Wn.2d at 63. No one factor is "necessarily preeminent," and "all of the factors together are a means of determining whether potential prejudice to a defendant requires severance and must be assessed in that light." *State v. Watkins*, 53 Wn. App. 264, 272 n.3, 766 P.2d 484 (1989). If the level of prejudice is not so great as to require severance, the court turns to the second step: weighing the prejudice from the joint trial against the benefits of joinder. *Bluford*, 188 Wn.2d at 311. However, if the prejudice plainly deprives the defendant of their right to a fair trial, then the second step need not be reached. *Id.*

STEP ONE: CONSIDERATION OF THE FOUR FACTORS

FACTOR ONE: STRENGTH OF THE STATE'S EVIDENCE. The trial court found that "[t]he strength of the State's case on each count is very similar." 1 RP (Feb. 10, 2022) at 31. The relative strength of the evidence is considered to ensure the State is not using one count's stronger evidence to bolster another count's weaker evidence. *See Bythrow*, 114 Wn.2d at 721-22. Krause contends the police investigation involving A.C.S. yielded more evidence than supported the other charges because there was no delay in her report to the police. But the evidence on each count need not be identical to be similarly strong. Each victim testified that

9

they did not consent to having sex with Krause, and the trial court was in the best position to evaluate the relative strength of the State's case on each count. We defer to the trial court's evaluation of the strength of the evidence. This factor does not support severing the charges.

FACTOR TWO: CLARITY OF THE DEFENSES. The trial court found Krause's defenses were the same. "The likelihood that joinder will cause a jury to be confused as to the accused's defenses is very small where the defense is identical on each charge." *Russell*, 125 Wn.2d at 64 (citing *State v. Hernandez*, 58 Wn. App. 793, 799, 794 P.2d 1327 (1990)).

Krause argues his defenses on all counts were not the same because he also raised an affirmative defense to the charge that he had raped A.C. while she was incapacitated. The trial court instructed the jury that they must acquit if they found that Krause had established, by a preponderance of evidence, his reasonable belief that A.C. was not incapacitated. *See* RCW 9A.44.030(1). Nevertheless, it is unlikely the jury was confused when Krause's defense theory on the other counts was consent.

The distinction between the defenses did not undermine Krause's ability to present them. While Krause contends he may have asserted his right against self-incrimination on the less serious counts of third degree rape in separate trials, he does not make a "'convincing showing'" that he had "'a strong need to refrain

from testifying.'" *Russell*, 125 Wn.2d at 65 (quoting *Watkins*, 53 Wn. App. at 270). This factor does not support severing the charges.

FACTOR THREE: JURY INSTRUCTIONS. The trial court found that the jury could be properly instructed. Jury instructions help ensure juries can compartmentalize the evidence and not be tainted by improper inferences, particularly when evidence concerning another crime is limited or not admissible. *Bythrow*, 114 Wn.2d at 720-21 (quoting *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987)).

The jury was instructed to decide each count separately. Krause could have proposed additional instructions, such as an ER 404(b) limiting instruction, but did not. *See* ER 105 (limiting instruction available upon request); *see also State v. Russell*, 171 Wn.2d 118, 124, 249 P.3d 604 (2011) (a trial court does not commit reversible error in failing to give a limiting instruction that was not requested). This factor does not support severing the charges.

FACTOR FOUR: CROSS ADMISSIBILITY. The trial court found that "these events are cross-admissible," 1 VRP (Feb. 10, 2022) at 31; that "it's the nature of the people, the acts, everything involved in the actual cases or charges that leads me to the conclusion that they are cross-admissible," *id.* at 34; that "[i]t is the interrelation between the allegations and all of these individuals which leads me to the conclusion that they are cross admissible," 5 VTP (Mar. 1, 2022) at 131; and

that "the evidence . . . all builds off of itself from the various witnesses." 12 VTP (Mar. 10, 2022) at 1090. Courts consider the likelihood and extent of evidentiary overlap among the charges to ensure that each charged offense is tried and proved on its own and not based on improper propensity inferences.[5] *See Slater*, 197 Wn.2d at 677-78.

Krause argues that the lack of cross admissible evidence prejudiced him because he faced four distinct rape charges in a single trial. In asking us to reverse based on the inherent prejudice of joining sex crimes, Krause relies on this court's decision in *State v. Saltarelli*, which said that "[a] careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." 98 Wn.2d 358, 363, 655 P.2d 697 (1982).[6] But this court clarified that the prejudicial effect of evidence of a prior rape is significant when "the evidence seems to achieve no more than to show a general propensity to rape." *Id.* at 365. In contrast, evidence of multiple crimes is properly

---

[5] ER 404(b) prohibits the use of prior crimes or misconduct to prove an accused person's propensity to have committed the charged crime. Krause argues the victims provided "inflammatory" testimony that had nothing to do with the charged offenses. Suppl. Br. of Resp't at 27-28. A trial court's consideration of cross admissibility is not a substitute for an evidentiary ruling based on a timely, proper objection. To the extent Krause is challenging the trial court's evidentiary rulings, that is beyond the scope of our limited grant of review. *See* RAP 13.7(b).

[6] In subsequent cases involving sex crimes, we emphasized the need for courts to "give special consideration to the probative value of such [prior bad act] evidence when balancing against the prejudicial effect of such evidence, especially when corroborating evidence is not available." *State v. DeVincentis*, 150 Wn.2d 11, 25, 74 P.3d 119 (2003).

admitted in a joint trial to prove the respective charges and may not be used for an improper propensity purpose. *Cf. State v. Miller*, 33 Wn. App. 2d 560, 565, 562 P.3d 1281 (2025) ("[T]he State used the evidence of various acts of abuse by Miller only to satisfy its burden to prove the elements of the charged crimes beyond a reasonable doubt and not for any improper purpose.").

Under these facts, we agree with the trial court that separate trials would "potentially have all of the same witnesses." 12 VTP (Mar. 10, 2022) at 1090. Here, the victims' relationships with each other, the impact that those relationships had on their decisions to report, and the interactions they had regarding each other's experiences would have been admissible in separate trials to prove credibility, state of mind, and motive. Specifically, A.C.S.'s decision to report that Krause raped her provided helpful context for the count concerning A.L. by explaining A.L.'s state of mind, her initial reluctance to report, and the progression of events. A.L.'s decision to report that Krause raped her provided helpful context for the count concerning A.C. because A.C. decided to report Krause raped her to support A.L. In turn, A.C.'s testimony that Krause had denied raping A.C.S. provided helpful context for the count concerning A.C.S. The trial court had discretion to conclude the probative value of this evidence would not be substantially outweighed by its tendency to generate unfair prejudice in separate

trials. Nevertheless, as the State now concedes, the details of each victims' rape would not have been admissible in separate trials.[7]

This factor supports severing the charges because not all the same evidence in Krause's joint trial would have been admissible in separate trials. However, the severance analysis does not stop there because a joint trial is expected to have some evidence that is not cross admissible. In fact, we have allowed joinder of sex offenses against multiple victims before under similar circumstances. *See, e.g.*, *State v. Markle*, 118 Wn.2d 424, 439, 823 P.2d 1101 (1992); *State v. Kalakosky*, 121 Wn.2d 525, 538-39, 852 P.2d 1064 (1993). And it is well established that lack of cross admissibility does not automatically preclude a joint trial. *See Bluford*, 188 Wn.2d at 315; *see also, e.g.*, *Bythrow*, 114 Wn.2d at 721 (lack of cross admissibility may not be prejudicial when the jury can reasonably be expected to compartmentalize the evidence (citing *Drew v. United States*, 118 U.S. App. D.C. 11, 331 F.2d 85, 91 (D.C. Cir. 1964))).

Next, we must determine whether the likely prejudice in not severing the charges necessarily prevented Krause from receiving a fair trial. Krause contends that the decisions in *Bluford* and *Slater* required the trial court to find undue prejudice here. But *Bluford* and *Slater* are distinguishable. In *Bluford*, the State

---

[7] The State does not challenge the holding of the Court of Appeals "that evidence of the details of each crime were not cross-admissible under ER 404(b)." *See* Suppl. Br. of Pet'r at 9.

improperly joined sex offenses with unrelated robberies—crimes with "notable" differences in character—involving different victims. 188 Wn.2d at 314-15. The court found no evidentiary overlap and minimal benefit. *Id*. at 315-16. In *Slater*, the State joined a failure-to-appear charge with an underlying domestic violence no contact order violation charge. 197 Wn.2d at 679-80. The court held the charges were "not connected or related in any way." *Id*. In contrast, here, all counts had the same character of offense and involved interconnected victims who would potentially have been called to testify multiple times if there were separate trials.

Krause also contends that the prosecution in closing "invited the jury to consider Krause's conduct as a unified whole and sought to blend the three complainants' claims throughout the argument." Suppl. Br. of Resp't at 8-9 (citing 14 VTP (Mar. 14, 2022) at 1368-88). Krause specifically points to the prosecutor's "generalized appeal for the jury to return 'one verdict.'" *Id*. (quoting 14 VTP (Mar. 14, 2022) at 1385). However, Krause does not contend there was prosecutorial misconduct, and the prosecutor's closing argument is unlike the improper "repeated focus on . . . guilt and propensity to violate court orders" from the prosecution in *Slater*, 197 Wn.2d at 683. In its closing argument, the prosecution did not use the evidence of multiple acts of rape by Krause for an improper propensity purpose.

We reject Krause's various arguments that the likely prejudice of joining the charges would necessarily have prevented him from receiving a fair trial. Whether to sever the charges was within the trial court's discretion because it found some evidence cross admissible, and it also found that the jury was able to separate and compartmentalize the evidence on the different counts. Therefore, the trial court correctly reached the second step: weighing any prejudice from the joint trial against the benefits of joinder. *See Slater*, 197 Wn.2d at 677; *Russell*, 125 Wn.2d at 63.

STEP TWO: WEIGHING THE PREJUDICE AGAINST THE BENEFITS OF JOINDER

Under this second step, the risk of the jury making an improper propensity inference from the evidence that was not cross admissible must be weighed against the benefits of joinder. The trial court did not abuse its discretion when it concluded the benefits of joinder outweighed the risk of prejudice. As the trial court noted, the State would have potentially called all three victims to testify in each other's trials to provide context. *See* 12 VTP (Mar. 10, 2022) at 1090. The fact that the same witnesses could be required to testify in multiple trials weighed heavily in favor of a joint trial.

Neither *Bluford* nor *Slater* involved this kind of overlap in witnesses. In *Bluford*, because the nine counts of sex crimes and robberies were unrelated and unconnected, "the State would not have been required (or allowed) to call all of its

16

witnesses in each separate trial," so "the interest in judicial economy loses much of its force." 188 Wn.2d at 315-16. In *Slater*, "the witnesses as to each charge in this case were different." 197 Wn.2d at 680. A joint trial is better supported in this case than in *Bluford* and *Slater*.

As amicus highlights, "'Joint trials have long 'play[ed] a vital role in the criminal justice system' . . . allowing victims to avoid repeatedly reliving trauma." Br. of Amicus Curiae Sexual Violence L. Ctr. at 9 (alterations in original) (quoting *Samia v. United States*, 599 U.S. 635, 654, 143 S. Ct. 2004, 216 L. Ed. 2d 597 (2023)). The well-being of victims is a compelling reason to join offenses. Amicus also reminds us that Washington recognizes that "[s]exual assault is the most heinous crime against another person short of murder. Sexual assault inflicts humiliation, degradation, and terror on victims. The perpetrator's age, gender, or relationship does not define the seriousness." *Id.* at 10; RCW 7.105.900(3)(b). Washington law mandates "all victims and witnesses of crime are treated with dignity, respect, courtesy, and sensitivity." RCW 7.69.010. We cannot ignore the fact that the burden of testifying in court may contribute to the low reporting rates of rape. *See* RCW 7.105.900(3)(b) ("Rape is recognized as the most underreported crime; estimates suggest that only one in seven rapes is reported to authorities."); *State v. W.R.*, 181 Wn.2d 757, 771, 336 P.3d 1134 (2014) (Owens, J., dissenting) (explaining how "our rape laws 'reflect[ed] male-oriented interests' and resulted in

'low rates of reporting, arrest, prosecution, and conviction'" (alteration in original) (quoting Wallace D. Loh, *The Impact of Common Law and Reform Rape Statutes on Prosecution: An Empirical Study*, 55 WASH. L. REV. 543, 570 (1980))); *see also State v. Morley*, 46 Wn. App. 156, 160, 730 P.2d 687 (1986) (recognizing "the State's compelling interest in . . . encouraging rape victims to report crime").

The benefits of joinder in this case are clear. A.C.S. initially withdrew from prosecution due to "time and stress," agreeing to participate again only when another victim, A.L., came forward. Clerk's Papers at 437. A.C. did not initially report Krause raped her because she "did not want to have years of [her] life with court." 11 VTP (Mar. 9, 2022) at 1055. A.C. ultimately decided to come forward to help A.L. *Id.* A.C.S. and A.C. traveled great distances to testify. Requiring two or three separate trials—each potentially requiring victim testimony, cross-examination, and reliving trauma—would do damage to the administration of justice.

## CONCLUSION

The trial court did not abuse its discretion in denying Krause's motions to sever. Considering the strength of the evidence, the clarity of defenses, the jury instructions, and the extent the evidence was cross admissible, Krause has not demonstrated that the evidence in his joint trial invited the jury to cumulate evidence to find guilt or infer a criminal disposition. While there was potential

prejudice from the evidence that was not cross admissible, it did not outweigh the benefits of a joint trial because of the overlapping witnesses.

We reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

González, J.
_____
González, J.

WE CONCUR:

Stephens, C.J.
_____
Stephens, C.J.

Montoya-Lewis, J.
_____
Montoya-Lewis, J.

Johnson, J.
_____
Johnson, J.

Whitener, J.
_____
Whitener, J.

Madsen, J.
_____
Madsen, J.

_____

_____
[ w.'LOROVO

19

No. 103835-6

GORDON McCLOUD, J. (dissenting)—In *State v. Bluford*, we addressed two key issues concerning joinder and severance of multiple charges against a single defendant. 188 Wn.2d 298, 393 P.3d 1219 (2017). First, we held that when trial courts hear motions to join or sever charges, they must consider whether such joinder (or failure to sever) will result in undue prejudice to the defendant. *Id.* at 307-10. Second, we held that "[j]udicial economy is relevant to joinder but cannot outweigh a defendant's right to a fair trial." *Id.* at 311.

In this case, everybody seems to agree that joinder of the different sexual crimes against Cole Krause resulted in the admission of otherwise inadmissible and prejudicial evidence. The majority acknowledges that "not all the same evidence in Krause's joint trial would have been admissible in separate trials." Majority at 14. The State agrees, and so did the Court of Appeals' majority and dissent. Suppl. Br. of Pet'r at 9 ("The majority and dissent agreed that evidence of the details of each crime were not cross-admissible under ER 404(b)."); *State v. Krause*, No. 84599-3-I, slip op. at 23 (Wash. Ct. App. Dec. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/845993.pdf, *id.* at 59 (Díaz, J., dissenting).

And the parties and the majority apparently all agree that the only evidence that would have been cross admissible concerned corroboration of the reasons for delayed reporting. The most prejudicial evidence—the evidence about the details of each rape—would not have been cross admissible.

The majority balances the prejudice posed by these inadmissible, graphic, violent details of other sexual assault crimes against the burden of complainants testifying at separate trials. It concludes that because severance might have required victims of sexual assault to testify at separate trials, that consideration tips the scales in favor of affirming the otherwise prejudicial joinder. Majority at 16-18.

To be sure, "[t]he mere fact that evidence is not cross admissible does not automatically preclude joinder. To establish error, [defendant] must also show that the prejudicial effect of trying all the counts together outweighed the benefits of joinder." *Bluford*, 188 Wn.2d at 315 (citation omitted).

But we have never held that the fact that the multiple crimes are sexual assaults with different complainants and lack of cross admissibility weighs in favor of consolidating the charges into one trial. Instead, we have always come to the opposite conclusion: the fact that multiple crimes are sexual assaults with different complainants and lack of complete cross admissibility weighs strongly in favor of severance. *Id.* at 315-16 ("We have previously noted 'the inherently prejudicial

effect of prior sexual offenses.' Moreover, because the evidence was not cross admissible, the interest in judicial economy loses much of its force because the State would not have been required (or allowed) to call all of its witnesses in each separate trial." (citation omitted) (quoting *State v. Bythrow*, 114 Wn.2d 713, 718-19, 790 P.2d 154 (1990)). *See generally State v. Saltarelli*, 98 Wn.2d 358, 364, 655 P.2d 697(1982).

The majority's decision to treat sex crimes as the most likely to present the greatest reason for joinder, rather than the most likely to present the greatest reason for severance, is unprecedented. I therefore respectfully dissent.

I.    PREJUDICE IS THE MOST IMPORTANT INQUIRY WHEN DECIDING BOTH A MOTION TO SEVER AND A MOTION FOR JOINDER

Prejudice to the criminal defendant is the critical inquiry when deciding both a motion to sever and a motion for joinder.

Under our court rules, a motion to sever charges must be granted when doing so will "promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). Under our controlling precedent implementing that court rule, "A defendant 'seeking severance ha[s] the burden of demonstrating that a trial involving [all] counts would be so manifestly prejudicial as to outweigh the concern

3

for judicial economy.'" *State v. Slater*, 197 Wn.2d 660, 676, 486 P.3d 873 (2021)

(alterations in original) (quoting *Bythrow*, 114 Wn.2d at 718).

We have provided specific instructions on how to measure such possible

prejudice when deciding a motion to sever: "Joinder of offenses carries the potential

for prejudice if (1) the defendant may have to present separate, possibly conflicting,

defenses, (2) the jury may infer guilt on one charge from evidence of another charge,

or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if

considered separately, the evidence would not support every charge." *Id.* at 676-77

(citing *Bythrow*, 114 Wn.2d at 718).

We have doubled down on the fact that the critical question is whether denial

of severance would prejudice the defendant as the key inquiry by explaining,

"'Prejudice may result from joinder if the defendant is embarrassed in the

presentation of separate defenses, or if use of a single trial invites the jury to

cumulate evidence to find guilt or infer a criminal disposition.'" *Id*. at 677 (quoting

*State v. Russell*, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994)).

And finally, to determine whether denying severance will cause undue

prejudice to the defendant, we have instructed that trial courts must consider four

factors, most notably the cross admissibility of evidence on the separate charges:

"'(1) the strength of the State's evidence on each count; (2) the clarity of defenses as

to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.'" *Id.* (quoting *Russell*, 125 Wn.2d at 63).

Prejudice is also the critical inquiry when deciding a motion for joinder: "Ever since Washington first allowed for the joinder of offenses, our courts have recognized the close relation of joinder and severance, and have held that joinder should not be allowed in the first place if it will clearly cause undue prejudice to the defendant." *Bluford*, 188 Wn.2d at 307.

Finally, we have come to a clear conclusion on how to weigh prejudice to the defendant against judicial economy: "both prejudice to the defendant and judicial economy are relevant factors in joinder decisions, *but judicial economy can never outweigh a defendant's right to a fair trial*." *Id.* at 305 (emphasis added).

II.  THIS IS A RARE CASE IN WHICH THE PARTIES AGREE THAT JOINDER AND DENIAL OF SEVERANCE POSED POSSIBLE PREJUDICE TO THE DEFENDANT

The majority asserts that evidence of the other rapes would have been admissible in each trial "to provide context." Majority at 16. I assume that the majority means that one complainant could have testified at another complainant's trial about how their conversations helped them decide to report and follow through

with the criminal prosecution. I agree: that evidence would have been cross admissible.

But the testimony provided by the victim-witnesses who testified in Krause's joint trial did not provide just "context." They gave detailed descriptions from start to finish of each sex offense. Not even the State claims that that testimony was cross admissible on each separate count. And as the Court of Appeals explained, even though the State sought joinder of charges to supposedly provide context, the State did not follow through on questioning its witnesses about context. *Krause*, No. 84599-3-I, slip. op. at 2. The State followed through by questioning its witnesses about the specific details about each crime.

III. THE MAJORITY DEALS WITH THIS BY SILENTLY OVERRULING CONTROLLING PRECEDENT HOLDING THAT JOINDER OF SEX CRIMES IS ESPECIALLY PREJUDICIAL AND DISFAVORED

The majority deals with the problem of lack of cross admissibility, along with its potential for prejudice, by adopting a new rule. Its new rule minimizes the importance of the prejudice inquiry—but only in sex crime cases. It seems to hold—for the first time—that when the charges are sex offenses, we should err on the side of joinder to protect victims, rather than err on the side of severance to protect the criminal defendant's right to a fair trial. Majority at 16-18.

6

Our past precedent does make clear that when courts decide whether to join or sever offenses, we should treat sex crimes in a special way. But it's not the special way that the majority uses. It's the opposite.

As we summarized in *Bluford*, "We have previously noted 'the inherently prejudicial effect of prior sexual offenses.'" 188 Wn.2d at 315 (quoting *Bythrow*, 114 Wn.2d at 718-19). This is because sex charges pose a much higher risk of prejudice from joinder because they carry the greatest disgust, societal disapproval, and moral opprobrium. *State v. DeVincentis*, 150 Wn.2d 11, 24, 74 P.3d 119 (2003) ("Weighing the prejudicial effect [of prior bad acts] is especially important for cases involving sexual crimes."); *Saltarelli*, 98 Wn.2d at 363 (criticizing making exceptions to admit evidence of prior bad acts in sex cases and noting that "[a] careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest. 'Once the accused has been characterized as a person of abnormal bent, driven by biological inclination, it seems relatively easy to arrive at the conclusion that he must be guilty, he could not help but be otherwise'") (quoting M.C. Slough & J. William Knightly, *Other Vices, Other Crimes*, 41 Iowa L. Rev. 325, 333-34 (1956)); *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009) (recognizing the danger of prejudice when joining

7

sex crime charges even when jury is instructed to consider the charges separately);

*see also State v. Neufeld*, 1998 ND 103, ¶15 n.3, 578 N.W.2d 536 ("Numerous

jurisdictions have considered joinder of sex offenses prejudicial when the evidence

supporting each indictment would not have been admissible in the trial of the other."

(citing *McKinney v. State*, 82 Md. App. 111, 570 A.2d 360 (1990); *Jenkins v. State*,

472 So. 2d 1128, 1130 (Ala. Crim. App. 1985)).

The Court of Appeals summarized in detail the inadmissible descriptions of

other sex offenses that were admitted into evidence and the prejudice that they posed.

The majority agrees that the bulk of those detailed descriptions were admissible on

each separate count, but not on the other counts. Our controlling precedent compels

us to consider that prejudice seriously, especially since these were all sex crimes.

Our controlling precedent tells us that when weighing that prejudice against the

economy of a consolidated trial, the value of judicial economy can never trump the

value of a fair trial. The majority's new rule fails to respect that precedent.

I therefore respectfully dissent.

_____
Gordon McCloud, J.

_____
Mungia, J.